**FOR THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| In re: | * | |
| MIN SIK KANG and MAN SUN KANG, Debtors. | * | Case No. 10-18839-RGM (Chapter 11) |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| In re: | * | |
| MS GRAND, INC., Debtor. | * | Case No. 11-10200-RGM (Chapter 7) |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | | |
|---|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION AND U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, AS SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY CAPITAL I, INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-TOP27, by and through C-III Asset Management LLC, solely in its capacity as Special Servicer, | * | Adv. Pro. No. _____ |
| Plaintiff | * | |
| v. | * | |
| MS GRAND, INC.; | * | |

VENABLE LLP
Gregory A. Cross, Esq.
Darek S. Bushnaq, Esq. (VA Bar No. 41313)
Catherine M. Guastello, Esq.
750 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone  410.244.7400
Facsimile  410.2447472
*Counsel for C-III Asset Management LLC, solely*
*in its capacity as Special Servicer for U.S. Bank National Association,*
*as Trustee, successor in interest to Bank of America, National Association,*
*as Trustee for Morgan Stanley Capital I, Inc., Commercial Mortgage*
*Pass-Through Certificates, Series 2007-TOP27 and Wells Fargo Bank,*
*National Association*

Serve on:
                              *

Raymond A. Yancy
1412 Colville Court         *
St. Augustine, FL 32095
                              *

RAYMOND A. YANCEY, IN HIS
CAPACITY AS CHAPTER 7 TRUSTEE   *
OF MS GRAND, INC.
                              *

Serve on:
                              *

Raymond A. Yancy
1412 Colville Court         *
St. Augustine, FL 32095
                              *

MS GRAND HOLDINGS ILLINOIS
LLC                               *

Serve on:                          *

Min Sik Kang         *
9378 Colbert Court
Fairfax, VA 22032         *

and                           *

Man Sun Kang        *
9378 Colbert Court
Fairfax, VA 22032,       *

Defendants.                *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT FOR SUBSTANTIVE CONSOLIDATION

U.S. Bank National Association, as Trustee, as successor-in-interest to Bank of America,

National Association, as Trustee for Morgan Stanley Capital I, Inc., Commercial Mortgage Pass-

Through Certificates, Series 2007-TOP27 (the "Trust"), by and through C-III Asset Management

LLC ("C-III"), solely in its capacity as Special Servicer for the Trust, and Wells Fargo Bank,

National Association, solely in its capacity as Master Servicer for the Trust, ("Wells Fargo" and,

2

together with the Trust, the "Plaintiffs" ), by and through undersigned counsel, hereby files this

Complaint for Substantive Consolidation (the "Complaint") to substantively consolidate MS

Grand Holdings Illinois LLC ("MS Grand Holdings") with the bankruptcy estate of MS Grand,

Inc. ("MS Grand" and, together with Min Sik Kang and/or Man Sun Kang, the "Debtors"), and

alleges as follows:

## PARTIES AND JURISDICTION

1.      This action is filed by Wells Fargo and U.S. Bank National Association, as

Trustee, as successor-in-interest to Bank of America, National Association, as Trustee for

Morgan Stanley Capital I, Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-

TOP27, by and through C-III Asset Management LLC, solely in its capacity as Special Servicer.

2.      U.S. Bank is a nationally chartered bank with its headquarters located at

800 Nicollet Mall, Minneapolis, Minnesota 55402.  U.S. Bank is the Trustee of the Trust.  As

described further below, MS Grand Holdings was indebted to the Trust pursuant to a $15 million

construction loan, secured by mortgages on three properties located in Illinois.  As a result of

certain defaults under the Loan Documents (define below), including, but not limited to payment

defaults, the Trust foreclosed on the properties.

3.      The Official Committee of Unsecured Creditors of the Debtors' estates

commenced an adversary proceeding, Official Committee of Unsecured Creditors v. Wells Fargo

Bank, National Association and Bank of America, National Association, as Trustee for Morgan

Stanley Capital I, Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-TOP27,

adversary proceeding no. 12-01499-RGM, seeking to recover amounts allegedly paid by MS

Grand to the Trust for debt service payments owed under the Loan Documents.

6743880-v8

4.      Wells Fargo is a nationally chartered bank with its headquarters located at 101 North Phillips Street, Sioux Falls, South Dakota 57104, and was the master servicer of the Loan (defined below).

5.      On October 19, 2010 (the "Petition Date"), MS Grand filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland.

6.      On December 17, 2010, an Order was entered transferring venue of MS Grand's chapter 11 bankruptcy case (the "Bankruptcy Case") to the United States Bankruptcy Court for the Eastern District of Virginia.

7.      On January 1, 2013, the Court entered an Order Granting Motion for Appointment of Chapter 11 Trustee. [Docket No. 796].[1]  On January 7, 2013, the United States Trustee submitted an Amended Appointment of Raymond A. Yancey as Chapter 11 Trustee to serve as Chapter 11 Trustee of the Bankruptcy Cases.  [Docket No. 799].

8.      On January 17, 2013, the Court entered the Order Approving Appointment of Raymond A. Yancey as Chapter 11 Trustee.  [Docket No. 817].

9.      On January 28, 2013, the Chapter 11 Trustee filed the Trustee's Emergency Motion to Convert Chapter 11 Case of MS Grand, Inc. to Case Under Chapter 7 (the "Motion to Convert"), [Docket No. 830], and the Court granted the Motion to Convert on March 13, 2013.  See Docket No. 901.

10.     The Court appointed Raymond A. Yancy as Chapter 7 trustee.  See Docket NO. 79.

---

[1]  Before it was converted to a chapter 7 liquidation, the Bankruptcy Case was jointly administered with the bankruptcy cases of Min Sik Kang and Man Sun Kang (collectively, the "Kangs"), Case No. 10-18839 (the "Kang Bankruptcy Case" and, together with the Bankruptcy Case, the "Bankruptcy Cases").  Unless otherwise indicated, all references to docket numbers refer to the docket in the Kang Bankruptcy Case.

6743880-v8

11.      MS Grand is a Maryland corporation.  Upon information and belief, its

principal place of business is 4800 Walden Lane, Lanham, Maryland.

12.      At all applicable times referred to herein, MS Grand Holdings was a

limited liability company organized under the laws of the State of Illinois.  Upon information and

belief, MS Grand Holdings' principal office was located at 4800 Walden Lane, Lanham,

Maryland 20706.

13.      Upon information and belief, MS Grand Holdings was involuntarily

dissolved on August 13, 2010.

14.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1134.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2).  The statutory predicate for the relief sought herein is Section

105 of the Bankruptcy Code.

## BACKGROUND

15.      MS Grand is a food product wholesaler that, upon information and belief,

sells primarily to retail supermarkets owned in whole or in part by the Kangs.

16.      Upon information and belief, the Kangs own or owned, in whole or in

part, more than 15 retail supermarkets.

17.      On or about July 17, 2006, MS Grand, the Kangs and Hawk Acquisition,

LLC ("Hawk") entered into an Agreement of Purchase and Sale for Fee and Leasehold Sites (the

"Fee Purchase Agreement").  A true and correct copy of the Fee Purchase Agreement is attached

hereto as **Exhibit 1**.

18.      At all applicable times referred to herein, MS-Grand Aurora, Inc.

("Aurora") was a corporation organized under the laws of the State of Illinois.  Upon information

and belief, Aurora's principal office was located at 4800 Walden Lane, Lanham, Maryland, 20706.

19.      Upon information and belief, Aurora was involuntarily dissolved on February 2, 2008.

20.      At all applicable times referred to herein, MS-Grand Bridgeview, Inc. ("Bridgeview") was a corporation organized under the laws of the State of Illinois.  Upon information and belief, Bridgeview's principal office was located at 4800 Walden Lane, Lanham, Maryland, 20706.

21.      Upon information and belief, Bridgeview was involuntarily dissolved on February 11, 2008.

22.      At all applicable times referred to herein, MS-Grand Joliet, Inc. ("Joliet," (and collectively with Aurora and Bridgeview, the "Tenants") was a corporation organized under the laws of the State of Illinois.  Upon information and belief, Joliet's principal office was located at 4800 Walden Lane, Lanham, Maryland, 20706.

23.      Upon information and belief, Joliet was involuntarily dissolved on February 8, 2008.

24.      Pursuant to the Fee Purchase Agreement, MS Grand agreed to purchase, among other things, Hawk's fee interest in (a) certain real property commonly known as 55 South Constitution Drive, Aurora, Illinois and the improvements thereon (the "Aurora Property"); (b) certain real property commonly known as 10280 South Harlem Avenue, Bridgeview, Illinois and the improvements thereon (the "Bridgeview Property"); and (c) certain real property commonly known as 191 South Larkin Avenue, Joliet, Illinois and the

6

improvements thereon (the "Joliet Property" and, collectively with the Aurora Property and the

Joliet Property, the "Fee Sites").  See Ex. 1 (Fee Purchase Agreement) at § 2.1 and Exs. A-1 – B.

25.      Pursuant to the Fee Purchase Agreement, MS Grand had the right to

designate a nominee to hold title to the Fee Sites.  See Ex. 1 (Fee Purchase Agreement) at § 15.6.

26.      Upon information and belief, the Kangs formed MS Grand Holdings and

MS Grand designated MS Grand Holdings to hold title to the Fee Sites

27.      MS Grand Holding is or was managed by MS-Grand Investment, LLC

("MS-Grand Investment").  At all applicable times referred to herein, MS-Grand Investment was

a limited liability company organized under the laws of the State of Illinois.  Upon information

and believe, MS-Grand Investment's principal office was located at 4800 Walden Lane, Lanham,

Maryland 20706.

28.      MS-Grand Investment was wholly-owned and managed by the Kangs.

29.      On or about March 1, 2007, MS Grand Holdings executed and delivered a

Promissory Note dated as of March 1, 2007 (the "Note") in the original principal amount of

$15,000,000.00 (the "Loan") to Bear Stearns Commercial Mortgage, Inc. (the "Original Lender")

for the purchase of the Fee Sites.  A true and correct copy of the Note is attached hereto as

**Exhibit 2**.

30.      The Loan was a loan made to MS Grand Holdings, a single-purpose entity

with no income.

31.      The Note was executed on behalf of MS Grand Holdings by Min Sik

Kang, as managing member of MS Grand Investment, as manager of MS Grand Holdings.

32.      The Note was secured by, among other things, (a) a Mortgage,

Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of March 1,

2007, which was recorded in the Kane County Recorder's Office on April 17, 2007 as Document

Number 2007K041656 (the "Aurora Mortgage"), which encumbered the Aurora Property; (b) a

Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of

March 1, 2007, which was recorded in the Cook County Recorder of Deeds on April 5, 2007 as

Document Number 0709518080 (the "Bridgeview Mortgage"), which encumbered the

Bridgeview Property; and (c) a Mortgage, Assignment of Leases and Rents, Security Agreement

and Fixture Filing dated as of March 1, 2007, which was recorded in the Will County Recorder's

Office on April 10, 2007, as Document Number 66P R 2007054689 (the "Joliet Mortgage"),

which encumbered the Joliet Property.  True and correct copies of the foregoing are attached

hereto as **Exhibits 3-5**, respectively.  The Aurora Mortgage, Bridgeview Mortgage and Joliet

Mortgage will be collectively referred to herein as the "Mortgages."  The Note, Mortgages and

all related loan and security documents shall be collectively referred to herein as the "Loan

Documents."

   33.  The Mortgages were each executed on behalf of MS Grand Holdings by

Min Sik Kang, as managing member of MS-Grand Investment, as manager of MS Grand

Holdings.

   34.  As further security for repayment of the Loan, MS Grand Holdings

executed and delivered (a) an Assignment of Leases and Rents dated as of March 1, 2007, which

was recorded in the Kane County Recorder's Office on April 17, 2007 as Document Number

2007K041657 (the "Aurora ALR"); (b) an Assignment of Leases and Rents dated March 1,

2007, which was recorded in the Cook County Recorder of Deeds' Office on April 5, 2007 as

Document Number 0709518081 (the "Bridgeview ALR"); and (c) an Assignment of Leases and

Rents dated March 1, 2007, which was recorded in the Will County Recorder's Office on April

10, 2007, as Document Number R 2007054690 (the "Joliet ALR" and, collectively with the

Aurora ALR and the Bridgeview ALR, the "ALRs").  True and correct copies of the foregoing

are attached hereto as **Exhibits 6-8**, respectively.  Each of the ALRs was executed on behalf of

MS Grand Holdings by Min Sik Kang, as managing member of MS-Grand Investment, as

manager of MS Grand Holdings.

35.      Pursuant to an Indemnity Agreement dated as of March 1, 2007 (the

"Indemnity Agreement"), the Kangs indemnified the lender against certain Losses (as defined in

the Indemnity Agreement) and unconditionally and absolutely guaranteed repayment of the Loan,

upon the occurrence of certain events.  A true and correct copy of the Indemnity Agreement is

attached hereto as **Exhibit 9.**

36.      Pursuant to a Lease Agreement dated as of February 28, 2007 (the

"Aurora Lease Agreement"), MS Grand Holdings leased the Aurora Property to Aurora and

Aurora became obligated to, among other things, pay rent to MS Grand Holding.  A true and

correct copy of the Aurora Lease Agreement is attached hereto as **Exhibit 10**.

37.      Pursuant to a Lease Guaranty dated as of February 28, 2007 (the "Aurora

Lease Guaranty"), Min Sik Kang unconditionally guaranteed payment of all rent and other

charges and performance owed by Aurora under the Aurora Lease.  A true and correct copy of

the Aurora Lease Guaranty is attached hereto as **Exhibit 11**.

38.      Upon information and belief, the Kangs wholly own or owned, directly or

indirectly, and managed and controlled Aurora.

39.      Pursuant to a Lease Agreement dated as of February 28, 2007 (the

"Bridgeview Lease Agreement"), MS Grand Holdings leased the Bridgeview Property to

Bridgeview and Bridgeview became obligated to, among other things, pay rent to MS Grand

Holding.  A true and correct copy of the Bridgeview Lease Agreement is attached hereto as **Exhibit 12**.

40.    Pursuant to a Lease Guaranty dated as of February 28, 2007 (the "Bridgeview Lease Guaranty"), Min Sik Kang unconditionally guaranteed payment of all rent and other charges and performance owed by Bridgeview under the Bridgeview Lease.  A true and correct copy of the Bridgeview Lease Guaranty is attached hereto as **Exhibit 13.**

41.    Upon information and belief, the Kangs wholly own or owned, directly or indirectly, and managed and controlled Bridgeview.

42.    Pursuant to a Lease Agreement dated as of February 28, 2007 (the "Joliet Lease Agreement" and, collectively with the Aurora Lease Agreement and the Bridgeview Lease Agreement, the "Lease Agreements"), MS Grand Holdings leased the Joliet Property to Joliet, and Joliet became obligated to, among other things, pay rent to MS Grand Holding.  A true and correct copy of the Joliet Lease Agreement is attached hereto as **Exhibit 14**.

43.    Pursuant to a Lease Guaranty dated as of February 28, 2007 (the "Joliet Lease Guaranty"), Min Sik Kang unconditionally guaranteed payment of all rent and other charges and performance owed by Joliet under the Joliet Lease.  A true and correct copy of the Joliet Lease Guaranty is attached hereto as **Exhibit 15.**

44.    Upon information and belief, the Kangs wholly own or owned, directly or indirectly, and managed and controlled Joliet.

45.    The Lease Agreements were executed on behalf of the Tenants by Min Sik Kang, as president of the Tenants.

46.    Min Sik Kang guarantied the Tenants' obligations to MS Grand Holdings under the Lease Agreements.

10

47.      Upon information and belief, the Tenants were operated without observing corporate formalities or following typical management and accounting practices.

48.      Upon information and belief, accounting reports were never prepared for the Tenants in accordance with generally accepted accounting principles.

49.      Upon information and belief, accounting, financial and/or inventory reports were never prepared for the Tenants in accordance with standard business practices.

50.      The Tenants failed to pay rent owing to MS Grand Holdings under the Lease Agreements.

51.      The Loan Documents were subsequently assigned to the Trust, pursuant to a series of assignments.

## The Appointment of an Examiner With Expanded Powers

52.      On March 16, 2011, the Unsecured Creditors' Committee of the Debtors' bankruptcy estates filed an emergency motion for the appointment of a chapter 11 trustee (the "Motion for the Appointment of a Chapter 11 Trustee"). [Docket No. 141].

53.      The appointment of a Chapter 11 trustee was necessary because, among other things:

a.      The Debtors treated their bankruptcy estates and their non-debtor affiliates as though they were a single enterprise, even though the Bankruptcy Cases were not substantively consolidated.

b.      The Debtors were suffering substantial losses as a result of their funneling product on credit to their non-debtor affiliates.

c.      Intercompany accounts receivable were worthless.

11

6743880-v8

      d.      MS Grand was floating checks in excess of funds actually on deposit in its bank accounts.

      e.      The Debtors were managing their non-debtor subsidiaries and engaging in transactions outside the ordinary course of business, including the sale of one of the affiliates nominally owned by the Kangs' daughter, but managed and funded by the Debtors.

      f.      The Kangs ignored regulatory requirements, specifically PACA and were at risk of causing the revocation of the PACA licenses held by MS Grand and certain non-debtor affiliates.

      g.      The Debtors did not comply with basic reporting requirements and did not accurately or adequately disclose their assets and liabilities.

      h.      The Debtors did not investigate or pursue potential causes of actions of their affiliates and may have allowed the right to pursue such actions to expire.

      i.      The Debtors made significant unauthorized post-petition payments on account of pre-petition claims and unapproved fees.

54.      On April 7, 2011, the Court entered a Consent Order Authorizing and Directing Appointment of Examiner with Expanded Powers (the "Examiner Order"), [Docket No. 180].

55.      Pursuant to the Examiner Order, the United States Trustee was authorized to appoint an examiner to, among other things, investigate the assets, liabilities and financial condition of the Debtors, the operation of the Debtors' businesses and the desirability of the continuation of the businesses.  See Order at 3(C).  The United States Trustee appointed Neil H. Demchick as the Chapter 11 Examiner (the "Examiner"), [Docket No. 193], and the Court entered an order approving the appointment on April 21, 2011.  [Docket No. 194].

6743880-v8

56.      On January 22, 2012, the Examiner filed the Chapter 11 Examiner's Status Report as of November 30, 2011 (the "Examiner's Report").  [Docket No. 371].  According to the Examiner's Report:

a.  The Debtors and their related stores have a "very thin and weak management structure for businesses of this size and complexity and have limited controls."

b.  "The Debtors do not have professional accounting and financial management . . . which is unusual for an operation of this scale and complexity."

c.  "The Debtors do not have corporate level support functions such as merchandising, facilities and personnel or detailed systems of internal accounting controls to safeguard assets."

d.  The Kangs manage the operations of all "Kang Related Stores."  Mr. Kang oversees distribution operations including, shipping, purchasing, personnel and accounting.  Mrs. Kang oversees accounting, including invoicing, collection of accounts receivable, accounts payable and cash management.

e.  MS Grand has a practice of issuing checks without sufficient funds and requiring vendors and/or store managers to hold the checks until sufficient funds are available.

f.  The Kangs allegedly sold interests in four of the Washington DC metro stores to groups of investors and the proceeds of these sales were to be used for the establishment of the Chicago stores.

6743880-v8

<u>See</u> Examiner's Report at pp. 7-24.

## **The Appointment of a Chapter 11 Trustee**

57.      On November 27, 2012, the Official Committee of Unsecured Creditors for the Debtors' estates filed a Motion for the Appointment of a Chapter 11 Trustee to replace the Examiner.  [Docket No. 763].

58.      The Court granted the Motion for the Appointment of a Chapter 11 Trustee by order entered January 1, 2013, [Docket No. 796], and approved the appointment of Mr. Yancey as the Chapter 11 Trustee (the "<u>Chapter 11 Trustee</u>") by order entered January 7, 2013.  [Docket No. 817].

## **The Conversion to Chapter 7**

59.      On January 28, 2013, the Chapter 11 Trustee filed the Motion to Convert.

60.      Among other things, the Trustee sought conversion of the MS Grand Bankruptcy Case because:

a.      MS Grand's assets were being used to benefit non-debtor affiliates.

b.      MS Grand is issuing checks for which there were insufficient funds on deposit.

c.      MS Grand's affiliated grocery stores were not paying for product shipped to the stores.

61.      The Court granted the Motion to Convert on March 13, 2013.  <u>See</u> Docket No. 901.

## **The Adversary Proceeding**

62.      On October 18, 2012, the Official Committee of Unsecured Creditors of the Debtors' estates (the "<u>Committee</u>") commenced an adversary proceeding, Official

14

Committee of Unsecured Creditors v. Wells Fargo Bank, National Association and Bank of America, National Association, as Trustee for Morgan Stanley Capital I, Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-TOP27, adversary proceeding no. 12-01499-RGM, by filing the Complaint to Avoid Transfers and Recover Property and for Related Relief (the "Complaint") seeking to recover amounts allegedly paid by MS Grand to the Trust for debt service payments owed under the Loan Documents.

63.        The Committee alleges that MS Grand made payments due on the Loan. See Complaint at ¶ 40.

64.        According to the Committee, MS Grand was not obligated to make payments to the Trust.  See Complaint at 41.

65.        At the time the Chicago sites were obtained, none of the locations were operating as grocery stores and the grocery businesses were required to, among other things, obtain required licenses and permits and incur costs related to restarting the eight grocery stores. See Complaint at ¶ 25.

66.        According to the Committee, the Kangs raised the funds necessary to restart the store operations through the sale of stock in certain of the "Chicago Entities" and through other transactions.  See Complaint at ¶ 26.

67.        According to the Complaint,

a.   MS Grand was insolvent.

b.   MS Grand routinely failed to pay operating debts as they came due.

c.   MS Grand "frequently carried large accounts receivable from its affiliates that were of dubious collectability."

See Complaint at ¶¶ 45-46.

68.     MS Grand Holdings and the Tenants have all been dissolved and none is
an operating entity.

## COUNT I
### (Substantive Consolidation—All Defendants)

69.     The Trust incorporates the allegations contained in paragraphs 1 through
68 as if set forth in full herein.

70.     The Kangs admit that substantive consolidation with MS Grand is
warranted because:

      a.  their creditors "dealt with them as a single unit and did not rely on
           their separateness in extending credit;" and/or

      b.  their estates "are so entangled , and untangling them would either be
           impossible or so time-consuming and costly that there would be
           nothing left to distribute to creditors."

See Motion and Memorandum in Support of Motion for Substantive Consolidation, [Docket No.
40], at p. 2.

71.     Substantive consolidation is based upon equitable principles rather than
statute.  Whether entities should be substantively consolidated is determined by their operations
and financial affairs.  Courts will examine (i) whether the creditors dealt with the entities as a
single economic unit and did not rely on their separate identity in extending credit or (ii) whether
the affairs of the debtor are so entangled that consolidation will benefit all creditors.

72.     Alternatively, courts may substantively consolidate entities where there is
a substantial identity of the entities, even where creditors relied upon the separate entities, if
consolidation is necessary to avoid some harm or realize some benefit.

16

73.    The Original Lender did not rely upon the separate identities of MS Grand or MS Grand Holdings in extending credit.

74.    The Original Lender relied upon the Kangs' credit in making the Loan. MS Grand Holdings did not have any income and the Fee Sites were not expected to generate any revenue for several months after the Loan was made.

75.    Factors considered by courts when issuing an order to substantively consolidate include:

      a.    Preparation of consolidated financial reports;

      b.    Unity of ownership;

      c.    Existence of parent or inter-corporate guarantees;

      d.    Transferring assets without proper corporate formalities;

      e.    Commingling of assets or corporate functions;

      f.    Difficulty in separating individual company's assets and liabilities; and

      g.    Profitability of consolidating at one location.

*Lack of Proper Corporate Formalities*

76.    Upon information and belief, MS Grand was operated without observing corporate formalities or following typical management and accounting practices.

77.    Upon information and belief, MS Grand Holdings was operated without observing corporate formalities or following typical management and accounting practices.

78.    Upon information and belief, accounting reports were never prepared for MS Grand in accordance with generally accepted accounting principles.

79.    Upon information and belief, accounting reports were never prepared for MS Grand Holdings in accordance with generally accepted accounting principles.

80.     Upon information and belief, accounting, financial and/or inventory reports were never prepared for MS Grand in accordance with standard business practices.

81.     Upon information and belief, accounting, financial and/or inventory reports were never prepared for MS Grand Holdings in accordance with standard business practices.

82.     Upon information and belief there is a history of MS Grand and/or the Kangs issuing checks without sufficient funds in the applicable bank account to satisfy the checks.

*Unity of Ownership*

83.     MS Grand is wholly owned by the Kangs.

84.     The Kangs own or owned, directly or indirectly, all of the ownership interests in MS Grand Holdings.

85.     The Kangs wholly own or owned MS-Grand Investment.

86.     There was a unity of ownership between MS Grand and MS Grand Holdings.

*Existence of Parent or Inter-corporate Guarantees*

87.     Parent and/or inter-corporate guarantees exist because, among other things, the Kangs, the ultimate owners of both MS Grand Holdings and MS Grand, guaranteed MS Grand Holdings' obligations under the Note.

*Transferring Assets without Corporate Formalities*

88.     Upon information and belief, assets were transferred by and among MS Grand Holdings and the Debtors without observing corporate formalities.

*Commingling Assets without Proper Corporate Formalities*

89.     Upon information and belief, there is a history of unreported inter-company transfers by and among the Debtors and MS Grand Holdings.

90.     Upon information and belief, assets of MS Grand Holdings and the Debtors were commingled.

*Commingling Corporate Functions*

91.     Upon information and belief, corporate functions of MS Grand Holdings, the Debtor and/or the Tenants were commingled.

92.     Upon information and belief, the Kangs controlled and/or performed all corporate functions for MS Grand.

93.     Upon information and belief, the Kangs controlled and/or performed all corporate functions for MS Grand Holdings.

94.     Upon information and belief, the Kangs controlled and/or performed all corporate functions for the Tenants.

*Difficulty in Separating Assets and Liabilities*

95.     Upon information and belief, the assets and liabilities of the Debtors and MS Grand Holdings are so entangled it would be difficult or impossible to separate individual company's assets and liabilities.

96.     Upon information and belief, the affairs of the Debtors and MS Grand Holdings are so entangled that consolidation will benefit the creditors.

97.     Upon information and belief, the affairs of the Debtors and MS Grand Holdings are so entangled that the costs of untangling would outweigh any benefit to the creditors from such untangling.

98.        Upon information and belief, creditors dealt with the Debtors and MS
Grand Holdings as a single economic unit and did not rely on their separate identities in
extending credit.

*Benefits/Harms*

99.        Upon information and belief, the Fee Sites were purchased for the benefit
of the Debtors.

100.        Upon information and belief, the Fee Sites were purchased so that MS
Grand would have additional retail supermarkets to sell food products to.

101.        Upon information and belief, the rent due from the Tenants would have
been sufficient to pay the monthly debt service payments owed to the Trust.

102.        The Trust obtained a Default Judgment Order from the United States
District Court for the Northern District of Illinois, Eastern Division, Case No. 10-1716 (the
"Default Judgment Order") against MS Grand Holdings as a result of its failure to pay amounts
due under the Loan Documents.  A true and correct copy of the Default Judgment Order is
attached hereto as **Exhibit 16**.

103.        The Trust obtained a Default Judgment Order against Min Sik Kang as a
result of the Tenants' failure to pay amounts due under the Leases.

104.        The equities require substantive consolidation of the Debtors and MS
Grand Holdings.

6743880-v8

**There Is Substantial Identity among the Entities
and Consolidation Is Necessary to Avoid Harm**

105.      There is substantial identity among MS Grand and MS Grand Holdings.

106.      The Debtors created MS Grand Holdings and caused MS Grand Holdings

to assume obligations of MS Grand so that the Debtors could expand into the Chicago market

and sell additional grocery products.

107.      As part of their expansion, MS Grand made certain loan payments to the

Trust, in furtherance of the anticipated benefit to be received by the Debtors.

108.      The Debtors received an immediate benefit from the Loan extended to MS

Grand because, as a result of the Loan, the Fee Sites were transferred to MS Grand Holdings,

thereby increasing the value of the Debtors.

109.      The Unsecured Creditor's Committee of MS Grand's estate has filed an

adversary proceeding in an attempt to force the Trust to turn over loan payments it allegedly

received from MS Grand on behalf of MS Grand Holdings.

110.      Consolidation is necessary to avoid the harm and inequity that would

result from requiring the Trust to turn over such payments.

**COUNT TWO
(Alter Ego – MS Grand Holdings)**

111.      The Trust incorporates the allegations contained in paragraphs 1 through

119 as if set forth in full herein.

112.      MS Grand Holdings was the mere instrumentality and/or business conduit

of the Debtors.

113.      The separate corporate forms of MS Grand Holdings and MS Grand

should be disregarded.

6743880-v8

114.        MS Grand should be held liable for the obligations of MS Grand

Holdings.

WHEREFORE, based upon the foregoing, the Trust requests the following relief:

(i) substantive consolidation of MS Grand and MS Grand Holdings; (ii) a determination that MS

Grand Holdings is the alter ego of MS Grand, such that MS Grand is liable for the debts of MS

Grand Holdings; and (iii) such other and further relief as is just and appropriate under the

circumstances of this case.

DATED: July 2, 2013.

*/s/ Darek S. Bushnaq*
Gregory A. Cross
Darek S. Bushnaq (VSB #41313)
Catherine Guastello Allen
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone (410) 244-7400
Facsimile (410) 244-7472
dsbushnaq@venable.com

Counsel for U.S. Bank National Association, as
Trustee, successor in interest to Bank of America,
National Association, as Trustee for Morgan
Stanley Capital I, Inc., Commercial Mortgage Pass-
Through Certificates, Series 2007-TOP27, by and
through C-III Asset Management LLC, solely in its
capacity as Special Servicer, and Wells Fargo Bank,
National Association

6743880-v8