## FOR THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| In re: | * |
| | |
| MS GRAND, INC., | *     Case No. 11-10200-RGM |
| Debtor. |       (Chapter 7) |
| | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

| | |
|---|---|
| WELLS FARGO BANK, NATIONAL ASSOCIATION AND U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, AS SUCCESSOR-IN-INTEREST TO BANK OF AMERICA, NATIONAL ASSOCIATION, AS TRUSTEE FOR MORGAN STANLEY CAPITAL I, INC., COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-TOP27, by and through C-III Asset Management LLC, solely in its capacity as Special Servicer, | * <br> * <br> * <br> *    Adv. Pro. No. 13-01182-RGM <br> * <br> * <br> * |
| Plaintiff | * |
| v. | * |
| MS GRAND, INC.; | * <br> * |
| RAYMOND A. YANCEY, IN HIS CAPACITY AS CHAPTER 7 TRUSTEE OF MS GRAND, INC.; | * <br> * |

VENABLE LLP
Gregory A. Cross, Esq.
Darek S. Bushnaq, Esq. (VA Bar No. 41313)
Catherine Guastello Allen, Esq.
750 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone  410.244.7400
Facsimile  410.244.7472
*Counsel for C-III Asset Management LLC, solely
in its capacity as Special Servicer for U.S. Bank National Association,
as Trustee, successor in interest to Bank of America, National Association,
as Trustee for Morgan Stanley Capital I, Inc., Commercial Mortgage
Pass-Through Certificates, Series 2007-TOP27 and Wells Fargo Bank,
National Association*

MS GRAND HOLDINGS ILLINOIS
LLC,                                        *

        Defendants.                    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## OPPOSITION TO CHAPTER 7 TRUSTEE'S MOTION TO DISMISS COMPLAINT

U.S. Bank National Association, as Trustee, as successor-in-interest to Bank of America, National Association, as Trustee for Morgan Stanley Capital I, Inc., Commercial Mortgage Pass-Through Certificates, Series 2007-TOP27 (the "Trust" or "Noteholder"), by and through C-III Asset Management LLC ("C-III"), solely in its capacity as Special Servicer for the Trust, and Wells Fargo Bank, National Association, solely in its capacity as Master Servicer for the Trust, ("Wells Fargo" and, together with the Trust, the "Plaintiffs"), by and through undersigned counsel, hereby files this opposition (the "Opposition") to the Chapter 7 Trustee's Motion to Dismiss Complaint (the "Motion to Dismiss"), [Adv. Pro. Docket No. 5], filed by Raymond A. Yancey, Chapter 7 Trustee (the "Trustee") for the estate of MS Grand, Inc. ("MS Grand"), seeking dismissal of the Complaint for Substantive Consolidation (the "Complaint") filed in the above-captioned adversary proceeding (the "Adversary Proceeding").

## I.    PRELIMINARY STATEMENT

MS Grand Holdings was created solely to act as MS Grand's designated nominee in connection with the purchase of three grocery store sites in the Chicago area.  As the designated nominee, MS Grand Holdings, a shell with no source of income, held title to the Fee Sites and became obligated on a loan in the original principal amount of $15 million.  One purpose of this transaction was to extend the Kangs' grocery empire into the Chicago area and to provide additional business for MS Grand's wholesale grocery product business.  As part of this business expansion, the loan payments owed by MS Grand Holdings were allegedly paid by MS Grand.

7015171-v5

MS Grand Holdings quickly defaulted on the Loan owed to the Noteholder and the Noteholder commenced foreclosure proceedings.[1]  The Trustee is now seeking to recover certain payments the Noteholder received in connection with the Loan.

The Plaintiffs have standing to seek substantive consolidation in this case because they satisfy the constitutional requirements for standing: the Plaintiffs have suffered and could suffer further injury as a result of the avoidance action filed by the Trustee on behalf of MS Grand, the injury is the result of the actions of the MS Grand, and the Court can redress the Plaintiffs' injury by a favorable decision.  Furthermore, the Trustee confuses the issue of whether the Plaintiffs have standing to be heard on general administrative aspects of the debtor's bankruptcy case as a whole with constitutional standing.  The Trustee's argument is misplaced because the Plaintiffs do not seek to be heard on "any" issue raised in the bankruptcy case but rather on a specific matter that arises as a result of the Trustee's avoidance action against the Plaintiffs. Furthermore, the majority of the case law recognizes the possibility of substantively consolidating debtor and non-debtor entities.  Finally, MS Grand Holdings was the mere instrumentality or business conduit of MS Grand, and MS Grand should also be liable for MS Grand Holdings' obligations as its alter ego.  Therefore the Plaintiffs' complaint should not be dismissed on any ground asserted by the Trustee.

## II.    FACTUAL AND PROCEDURAL HISTORY[2]

On October 19, 2010 (the "Petition Date"), MS Grand filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United

---

[1]    The Trustee argues that the fact that the Plaintiffs did not sue MS Grand in the foreclosure actions establishes that MS Grand has no liability.  This argument is baseless.  There was no need to sue MS Grand in order to foreclose on the Fee Sites.

[2]    The factual and procedural history is set forth in detail in the Complaint and is incorporated herein by reference.

States Bankruptcy Court for the District of Maryland, venue of which was subsequently

transferred to the United States Bankruptcy Court for the Eastern District of Virginia.[3]

### A.    **Background**

MS Grand is a food product wholesaler that, upon information and belief, sells primarily

to retail supermarkets owned in whole or in part by the Kangs, who own or owned more than 15

retail supermarkets.  MS Grand was controlled by the Kangs.

Pursuant to a Fee Purchase Agreement, MS Grand agreed to purchase, among other

things, fee interests in (a) real property and improvements in Aurora, Illinois (the "Aurora

Property"); (b) real property and improvements in Bridgeview, Illinois (the "Bridgeview

Property"); and (c) real property and improvements in Joliet, Illinois (the "Joliet Property" and,

collectively with the Aurora Property and the Joliet Property, the "Fee Sites").  See Complaint,

Ex. 1 (Fee Purchase Agreement) at § 2.1 and Exs. A-1 – B.

Pursuant to the Fee Purchase Agreement, MS Grand had the right to designate a nominee

to hold title to the Fee Sites.  See Complaint, Ex. 1 (Fee Purchase Agreement) at § 15.6.

Accordingly, the Kangs formed MS Grand Holdings and MS Grand designated MS Grand

Holdings to hold title to the Fee Sites.  MS Grand Holdings was managed by MS-Grand

Investment, LLC ("MS-Grand Investment"), which was wholly-owned and managed by the

Kangs.

In connection with the Fee Purchase Agreement, on or about March 1, 2007, MS Grand

Holdings executed and delivered a Promissory Note dated as of March 1, 2007 (the "Note") in

the original principal amount of $15,000,000.00 (the "Loan") to Bear Stearns Commercial

---

[3]    Before it was converted to a chapter 7 liquidation, MS Grand's bankruptcy case (the "Bankruptcy Case") was jointly administered with the bankruptcy cases of Min Sik Kang and Man Sun Kang (collectively, the "Kangs" and, together with MS Grand, the "Debtors"), Case No. 10-18839 (the "Kang Bankruptcy Case" and, together with the Bankruptcy Case, the "Bankruptcy Cases").

Mortgage, Inc. (the "Original Lender") for the purchase of the Fee Sites.  A true and correct copy

of the Note is attached to the Complaint as Exhibit 2.  The Note was executed on behalf of MS

Grand Holdings by Min Sik Kang, as managing member of MS Grand Investment, as manager of

MS Grand Holdings, and at the time the Loan was made, MS Grand Holdings had no income.

### B.      Facts Supporting Substantive Consolidation

On March 16, 2011, the Unsecured Creditors' Committee (the "Committee") of the

Debtors' bankruptcy estates filed an emergency motion for the appointment of a chapter 11

trustee (the "Motion for the Appointment of a Chapter 11 Trustee").  [Docket No. 141].

According to the Committee, the appointment of a Chapter 11 trustee was necessary

because, among other things:

a.      The Debtors treated their bankruptcy estates and their non-debtor affiliates

as though they were a single enterprise, even though the Bankruptcy Cases were not

substantively consolidated.

b.      The Debtors were suffering substantial losses as a result of their funneling

product on credit to their non-debtor affiliates.

c.      Intercompany accounts receivable were worthless.

d.      MS Grand was floating checks in excess of funds actually on deposit in its

bank accounts.

e.      The Debtors were managing their non-debtor subsidiaries and engaging in

transactions outside the ordinary course of business, including the sale of one of the affiliates

nominally owned by the Kangs' daughter, but managed and funded by the Debtors.

f.      The Kangs ignored regulatory requirements, specifically PACA, and were at risk of causing the revocation of the PACA licenses held by MS Grand and certain non-debtor affiliates.

g.      The Debtors did not comply with basic reporting requirements and did not accurately or adequately disclose their assets and liabilities.

h.      The Debtors did not investigate or pursue potential causes of actions of their affiliates and may have allowed the right to pursue such actions to expire.

i.      The Debtors made significant unauthorized post-petition payments on account of pre-petition claims and unapproved fees.

On April 7, 2011, the Court entered a Consent Order Authorizing and Directing Appointment of Examiner with Expanded Powers (the "Examiner Order"), [Docket No. 180].

Pursuant to the Examiner Order, the United States Trustee was authorized to appoint an examiner to, among other things, investigate the assets, liabilities and financial condition of the Debtors, the operation of the Debtors' businesses and the desirability of the continuation of the businesses. See Order at 3(C). The United States Trustee appointed Neil H. Demchick as the Chapter 11 Examiner (the "Examiner"), [Docket No. 193], and the Court entered an order approving the appointment on April 21, 2011. [Docket No. 194].

On January 22, 2012, the Examiner filed the Chapter 11 Examiner's Status Report as of November 30, 2011 (the "Examiner's Report"). [Docket No. 371]. According to the Examiner's Report:

a.   The Debtors and their related stores have a "very thin and weak management structure for businesses of this size and complexity and have limited controls."

b.  "The Debtors do not have professional accounting and financial management . . . which is unusual for an operation of this scale and complexity."

c.  "The Debtors do not have corporate level support functions such as merchandising, facilities and personnel or detailed systems of internal accounting controls to safeguard assets."

d.  The Kangs manage the operations of all "Kang Related Stores."  Mr. Kang oversees distribution operations including, shipping, purchasing, personnel and accounting.  Mrs. Kang oversees accounting, including invoicing, collection of accounts receivable, accounts payable and cash management.

e.  MS Grand has a practice of issuing checks without sufficient funds and requiring vendors and/or store managers to hold the checks until sufficient funds are available.

f.  The Kangs allegedly sold interests in four of the Washington DC metro stores to groups of investors and the proceeds of these sales were to be used for the establishment of the Chicago stores.

See Examiner's Report at pp. 7-24.

**C.**     **The Appointment of a Chapter 11 Trustee**

On November 27, 2012, the Official Committee of Unsecured Creditors for the Debtors' estates filed a Motion for the Appointment of a Chapter 11 Trustee to replace the Examiner. [Docket No. 763].

The Court granted the Motion for the Appointment of a Chapter 11 Trustee by order entered January 1, 2013, [Docket No. 796], and approved the appointment of Mr. Yancey as the

7015171-v5

Chapter 11 Trustee (the "Chapter 11 Trustee") by order entered January 7, 2013.  [Docket No.

817].

### D.      The Conversion to Chapter 7

On January 28, 2013, the Chapter 11 Trustee filed the Motion to Convert.

Among other things, the Trustee sought conversion of the MS Grand Bankruptcy Case

because:

> a.   MS Grand's assets were being used to benefit non-debtor affiliates.
>
> b.   MS Grand is issuing checks for which there were insufficient funds on
>      deposit.
>
> c.   MS Grand's affiliated grocery stores were not paying for product shipped to
>      the stores.

The Court granted the Motion to Convert on March 13, 2013.  See Docket No. 901.

The Kangs have admitted that substantive consolidation is appropriate because:

> a.   their creditors "dealt with them as a single unit and did not rely on their
>      separateness in extending credit;" and/or
>
> b.   their estates "are so entangled , and untangling them would either be
>      impossible or so time-consuming and costly that there would be nothing left to
>      distribute to creditors."

See Motion and Memorandum in Support of Motion for Substantive Consolidation, [Docket No.

40], at p. 2.

### E.      The Avoidance Action

On October 18, 2012, the Official Committee of Unsecured Creditors of the Debtors'

estates (the "Committee") commenced an adversary proceeding, Official Committee of

<u>Unsecured Creditors v. Wells Fargo Bank, National Association and Bank of America, National</u>

<u>Association, as Trustee for Morgan Stanley Capital I, Inc., Commercial Mortgage Pass-Through</u>

<u>Certificates, Series 2007-TOP27,</u> adversary proceeding no. 12-01499-RGM, by filing the

Complaint to Avoid Transfers and Recover Property and for Related Relief (the "<u>Avoidance</u>

<u>Complaint</u>") seeking to recover amounts allegedly paid by MS Grand to the Noteholder for debt

service payments owed under the Loan Documents.[4]

## III.    LEGAL ARGUMENT

### A.    <u>The Plaintiffs Have Standing to Seek Substantive Consolidation.</u>

In order to have standing, a plaintiff must establish (i) that it has suffered an injury in fact

or an injury is imminent or threatened; (ii) the injury is fairly traceable to the challenged action

of the defendant; and (iii) it is likely that the injury can be redressed by a favorable decision.  <u>See</u>

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992); <u>Pennell v. San Jose</u>, 485 U.S. 1, 8

(1988); <u>Emery v. Roanoke City School Board</u>, 432 F.3d 294, 298 (4th Cir. 2005).  Under this

standard, the Plaintiffs unquestionably have standing to assert a claim for substantive

consolidation against MS Grand and MS Grand Holdings because (i) the Plaintiffs have suffered

an injury – the Trustee is seeking to recover funds allegedly paid to the Plaintiffs by MS Grand

on MS Grand Holdings behalf; (ii) the injury is traceable to the challenged action of the

defendants – among other things, (a) but for MS Grand's alleged payments on MS Grand

Holdings' behalf, the Plaintiffs' would not be threatened with potential fraudulent conveyance

liability and (b) if, among other things, MS Grand and MS Grand Holdings had observed proper

corporate formalities and MS Grand Holdings had been properly capitalized, the Plaintiffs would

not be threatened with the potential fraudulent conveyance liability; and (iii) the Plaintiffs' injury

---

[4]    The Plaintiffs have asserted substantive consolidation as a defense in their Answer and Affirmative Defenses
filed in the Avoidance Action.

can be redressed if MS Grand Holdings and MS Grand are substantively consolidated. Accordingly, the Plaintiffs have standing to bring the Adversary Proceeding seeking to, among other things, substantively consolidate MS Grand and MS Grand Holdings.

The Trustee mistakenly conflates the issue of whether the Plaintiffs have standing to participate in the general administrative aspects of the Bankruptcy Case (or the Plaintiffs' Section 1109 "party in interest" standing to appear and be heard on any issue in a chapter 11 case) with the more basic issue of constitutional standing. The cases cited by the Trustee are inapplicable because the Plaintiffs are not attempting to appear and be heard on "any" issue raised in the Bankruptcy Case or on issues related to the general administration of the Bankruptcy Case.

The Plaintiffs are not seeking to

(i)      object to creditors' claims in the Chapter 7 case, as in In re Manshul
         Construction Corp., 223 B.R. 428 (Bankr. S.D.N.Y. 1998) (holding that non-
         creditor defendants in an adversary proceeding lacks standing to object to other
         creditor's claims against the estate in a chapter 7 bankruptcy case);

(ii)     object to the validity of the MS Grand's voluntary petition, as in Still v.
         FundsNet, Inc. (In re Southwest Equip. Rental), 152 B.R. 207 (Bankr. E.D.
         Tenn. 1992) (holding that a creditor lacks standing to object to filing of
         voluntary bankruptcy petition based upon lack of authorization by debtor's
         board of directors);

(iii)    oppose the trustee's motion to re-open a bankruptcy case to prevent the trustee
         from having the ability to pursue an action against the Plaintiffs, as in In re
         Miller, 347 B.R. 48 (S.D. Tex. 2006) (holding that status as defendant in

10

adversary proceeding does not give an entity general standing to participate in or effect the administration of the bankruptcy estate – i.e. defendant lacked standing to oppose trustee's motion to re-open the case to pursue a claim against the defendant) and In re Indus. Marine Diesel, Inc., 1997 WL 33474937 (Bankr. S.D. Ga. 1997) (holding that defendant lacked standing to oppose trustee's motion to reopen the bankruptcy case to pursue claims against defendant); or

(iv)     file a motion to convert the bankruptcy case or seek the appointment of a trustee or examiner, as in In re E.S. Bankest, L.C., 321 B.R. 590 (S.D. Fla. 2005) (defendant in medical malpractice adversary proceeding lacks standing to file a motion to convert or for the appointment of a trustee or examiner); or

(v)      object to a settlement in which the Plaintiffs have no interest in the funds from the settlement, as in Spain v. Williams (In re Williams), 10-03117, 2012 WL 115413 (Bankr. E.D. Va. 2012) (insolvent chapter 7 debtor lacks standing to object to settlement entered by chapter 7 trustee).

The Trustee also erroneously cites In re Cyberco Holdings, Inc.  That case does not stand for the proposition that "mere status as a defendant in an adversary proceeding is insufficient basis for standing to bring a claim for substantive consolidation," see Motion at 8.  In Cyberco Holdings, the court actually determined that authority for substantive consolidation is derived from Bankruptcy Code § 541 (rather than the court's equitable powers under Section 105); therefore, only the trustee has standing to seek substantive consolidation.  See Cyberco Holdings, Inc., 431 B.R. 404, 431-34 (Bankr. W.D. Mich. 2010).  Cyberco Holdings is not controlling precedent in the Fourth Circuit (or any circuit) and is contrary to controlling precedent in the

11

Eastern District of Virginia, which holds that creditors have standing to seek substantive

consolidation.  First Owners Assoc. of Forty Six Hundred Condominium Inc. v, Gordon Props,

LLC (In re Gordon Props., LLC), 478 B.R. 750, 756 (E.D. Va. 2012); see also, e.g., Bracaglia v.

Manzo (In re U.S. Corp.), 176 B.R. 359, 367-68 (D.N.J. 1995) (finding that bank, "as an

individual creditor, has standing to bring an action for substantive consolidation against the non-

debtor entity," and denying non-debtor's motion to dismiss); Simantob v. Lahijani (In re

Lahijani), 02-01797, 2005 WL 465840 (Bankr. C.D. Cal. 2005) unreported (finding that

"numerous district courts have held that it is proper for creditors to" move for substantive

consolidation and citing cases).

　　　　Because controlling precedent holds that a creditor has standing to assert a claim for

substantive consolidation, the Trustee's arguments that the substantive consolidation claim is

property of the estate, protected by the automatic stay similarly fail.

　　　　For the reasons discussed above, the Plaintiffs have standing to assert a claim (and

defense)[5] of substantive consolidation because the Noteholder has been injured by the actions of

MS Grand and MS Grand Holdings, which injuries can be redressed by a favorable decision.

Nothing more is required.

　　　　The Noteholder is also, however, a creditor, holding, at least, a contingent claim pending

the outcome of the Avoidance Action.  Pursuant to the Loan Documents, the Noteholder is a

creditor of MS Grand Holdings and, pursuant to the Guaranties is also a creditor of the Kangs.

The fact that the Noteholder and MS Grand Holdings executed deeds-in-lieu of foreclosure to

resolve certain foreclosure actions does not eliminate the debts owed to the Noteholder by MS

---

[5]    To the extent the claims asserted in the Adversary Proceeding should be resolved in the Avoidance Action,
rather than as a separate Adversary Proceeding, the Plaintiffs respectfully request that the Complaint and the
Motion to Dismiss be re-captioned and transferred to the Avoidance Action.

Grand Holdings or the Kangs.  In fact, as the Trustee acknowledges, the Noteholder has filed a

proof of claim in the Kangs' Bankruptcy Case, seeking payment of this debt.[6]  The entire concept

of substantive consolidation is premised upon the consolidation of two or more entities, such that

the creditors of one entity are entitled to recover from the assets of the other.  If the Trustee's

theory that one must be a creditor of all entities sought to be consolidated was accepted, a

creditor or trustee would almost never have standing to seek substantive consolidation because a

creditor is usually a creditor of only one of the entities sought to be consolidated.

**B.**      **The Plaintiffs Have Sufficiently Alleged Grounds for Substantive
Consolidation.**

In the Fourth Circuit, the appropriateness of substantive consolidation is evaluated using

an approach similar to an alter ego or piercing the corporate veil standard.  See Stone v. Echo (In

re Tip Top Tailors, Inc.), 127 F.2d 284, 287-89 (4th Cir. 1942) (holding that substantive

consolidation was appropriate where subsidiary was a mere shell, controlled by the parent

corporation, the corporate forms were disregarded, the subsidiary was not adequately

capitalized); In re Gordon Props., 478 B.R. at 759 (stating that "Stone is not only good law, and

binding precedent in this circuit, it fits comfortably within current case law.")  As noted in Stone,

"It is recognized in principle that the fiction of corporate entity may be disregarded where one

corporation is so conducted and controlled and its affairs are so conducted that it is, in fact, a

mere instrumentality or adjunct of another corporation."  127 F.2d at 289 (citation and internal

quotation marks omitted).

Those are the circumstances here.  MS Grand and the Kangs entered into the Fee

Purchase Agreement and created MS Grand Holdings to hold title to the Fee Sites and be the

---

[6]      Moreover, the Deed-in-Lieu Agreement do not contain any agreement to waive the debt and in fact expressly
state that the Deed-in-Lieu Agreement will not cause any merger of the fee interest in the respective properties
with the lien of the applicable mortgage on such properties.

borrower entity under the Loan and the Loan Documents.  It was anticipated that the Fee Sites

would, among other things, provide additional stores that MS Grand would sell food products to.

See Complaint at ¶¶ 15-51.   The Debtors and MS Grand Holdings did not obey corporate

formalities, did not comply with ordinary accounting and financial management, and did not

have appropriate corporate level support functions including merchandising, facilities, personnel

or systems of internal accounting controls to safeguard assets.  MS Grand Holdings was

managed and controlled by the Debtors.  Their affairs are so entangled that it would be costly

and time-consuming to unravel.  Furthermore, MS Grand Holdings was a mere corporate shell,

operated as the instrumentality of MS Grand to further expansion of the Kangs' grocery empire.

Accordingly, under controlling Fourth Circuit precedent, substantive consolidation is

appropriate.

The Plaintiffs have also alleged facts sufficient to establish a claim for substantive

consolidation under the Augie/Restivo and/or the Auto-Train tests.  Under the Augie/Restivo

test, courts will examine (i) whether the creditors dealt with the entities as a single economic unit

and did not rely on their separate identity in extending credit or (ii) whether the affairs of the

debtor are so entangled that consolidation will benefit all creditors.  Union Savs. Bank v.

Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co.), 860 F.2d 515, 518 (2nd Cir.

1988).  Under the Auto-Train test, courts may substantively consolidate entities where there is a

substantial identity of the entities, even where creditors relied upon the separate entities, if

consolidation is necessary to avoid some harm or realize some benefit.  Drabkin v. Midland-Ross

Corp. (In re Auto-Train Corp.), 810 F.2d 270, 276 (D.D.C. 1987).

In this case, substantive consolidation is appropriate under either test.  The Loan was not

extended to MS Grand Holdings because of its creditworthiness.  MS Grand Holdings did not

14

have any income and the Fee Sites were not expected to generate any revenue for several months after the Loan was made.  MS Grand Holdings and MS Grand were operated without observance of the typical corporate formalities and accounting practices.  Accounting, financial and/or inventory reports were not prepared for MS Grand Holdings or MS Grand in accordance with standard business practices.  There is a unity of ownership between MS Grand Holdings and MS Grand – each are owned, directly or indirectly, by the Kangs.  There are inter-corporate guarantees because, among other things, the Kangs, the ultimate owners of both MS Grand Holdings and MS Grand, guaranteed MS Grand Holdings' obligations under the Note.  Assets were transferred by and among MS Grand Holdings and the Debtors without observing corporate formalities and there is a history of unreported inter-company transfers by and among the Debtors and MS Grand Holdings.  The corporate functions of MS Grand and MS Grand Holdings were commingled and the Kangs performed or controlled all corporate actions for both MS Grand and MS Grand Holdings.  It appears, and the examiner appointed over the MS Grand bankruptcy case determined, that the affairs of MS Grand are so entangled with the affairs of its affiliates that it would be difficult or impossible to separate an individual company's assets and liabilities and the costs of doing so (were it even possible) would outweigh the benefit to any creditors.

The Trustee argues that substantive consolidation is not appropriate here because it could eliminate the Avoidance Action, which would reduce recoveries by, and therefore harm, the creditors of MS Grand's estate.  This argument is legally invalid.  When analyzing benefits and harms the issue is not whether substantive consolidation will reduce recoveries of the creditors of one estate.  See In re Auto-Train, 810 F.2d at 277 (noting that because every entity is likely to have different debt to equity ratios, consolidation almost invariably redistributes wealth among

7015171-v5

the creditors of different entities).  Rather, the question is whether substantive consolidation will eliminate or reduce a creditor's particular right or expectations.  For example, in Augie/Restivo, substantive consolidation would have caused one creditor's claim to become undersecured and subordinate to another creditor's super-priority administrative claim.  860 F.2d at 517-18.

In this case, fairness dictates substantive consolidation of MS Grand Holdings and MS Grand.  The Fee Sites were purchased at the direction of and for the benefit of MS Grand and its wholesale food product business.  MS Grand and the Kangs therefore received some benefit and anticipated that they would receive additional benefits.  Moreover, MS Grand and/or the Kangs, never required the tenants, who were also wholly owned ultimately by one or both of the Kangs, to pay rent owed to MS Grand Holdings (which rents would have produced sufficient income to make the Loan payments).  If MS Grand and MS Grand Holdings are consolidated, MS Grand may be able to assert claims against the tenants for these amounts.

Simply stated, the Noteholder is entitled to assert a claim and/or defense of substantive consolidation in response to the Avoidance Action.  Any secondary effect on creditors of the MS Grand estate because the Trustee will not recover funds from the Noteholder is insufficient to defeat substantive consolidation.

### C.    A Debtor and Non-Debtor Can Be Substantively Consolidated.

The Trustee's assertion that substantive consolidation of a non-debtor and debtor should not be allowed because it effectively causes an involuntary bankruptcy of the non-debtor, without procedural safeguards is incorrect as a matter of law.  In fact, most courts, including the Eastern District of Virginia, recognize that a debtor and non-debtor can be substantively consolidated.  See In re Fas-Mart Convenience Stores, Inc., 320 B.R. 587, 594 (Bankr. E.D. Va. 2004) (noting that substantive consolidation has been applied to debtors and non-debtors and

suggesting that it is permissible in some circumstances); see also In re Geo. W. Park Seed Co.,

2010 WL 5173179 (Bankr. S.C. 2010) (noting that debtors and non-debtors may be substantively

consolidated); In re Bonham, 229 F.3d 750, 763-68 (9th Cir. 2000) (affirming substantive

consolidation of debtors and non-debtors); Soviero v. Franklin Nat'l Bank of Long Island, 328

F.2d 446 (2nd Cir. 1964) (affirming order directing substantive consolidation of debtor with 13

non-debtor affiliates); Heller v. Langenkamp (In re Tureaud), 59 B.R. 973, 978 (affirming order

substantively consolidating debtor and non-debtors); White v. Creditors Serv. Corp. (In re

Creditors Serv. Corp.), 195 B.R. 680, 690 (Bankr. S.D. Ohio 1996) (ordering substantive

consolidation of debtor and non-debtors); Bracaglia v. Manzo (In re U.S. Corp.), 176 B.R. 359

(Bankr. D.N.J. 1995) (ordering substantive consolidation of debtor and non-debtor).  In addition,

because MS Grand Holdings is the alter ego of MS Grand, it is not entitled to the same

procedural safeguards that a truly independent non-debtor would receive.  See In re U.S. Corp.,

176 B.R. at 369-70 ("Where the non-debtor entities are alter-egos of the debtor, the creditors

have the right to move for extension and consolidation independent from the right to force those

entities into bankruptcy pursuant to 11 U.S.C. § 303.").  Accordingly, the Trustee's argument

against the substantive consolidation of MS Grand and MS Grand Holdings because MS Grand

Holdings is not a debtor does not apply.[7]

### D.    The Plaintiffs Adequately Pleaded Their Claims.

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, as incorporated by

Bankruptcy Rule 7008, to state a claim, a plaintiff must allege only a short and plain statement

for the grounds for the court's jurisdiction, a short and plain statement of the claim showing that

the plaintiff is entitled to relief, and a demand for the relief sought.  See Bankr. R. Civ. P. 7008.

---

[7] Furthermore, the Kangs, who are the principals of the now-dissolved MS Grand Holdings, were served with the Complaint, have notice that the Plaintiffs are seeking substantive consolidation, but have not objected to the requested relief.  The Kangs have had an opportunity to respond, but have chosen not to.

In their 22-page and 118-paragraph Complaint, the Plaintiffs more than satisfy this requirement by alleging facts sufficient to support each element of a claim for substantive consolidation and a claim for alter-ego. The allegations are far from mere legal conclusions couched as factual allegations. Rather, the allegations describe in detail facts supporting the existence of the factors that support substantive consolidation and alter ego. Moreover, even though not required to do so, the Plaintiffs supported these allegations with evidence, including, but not limited to, documents attached to the Complaint and citations to the record that support the factual allegations of the Complaint. Among other things, the Plaintiffs cited to admissions made by the Kangs in connection with their motion for substantive consolidation, allegations made by the Unsecured Creditors Committee in support of their motion for the appointment of an examiner, findings contained in the Examiner's Report, statements made by the Trustee in support of the motion to convert MS Grand's bankruptcy case from Chapter 11 to Chapter 7 and statements made by the Trustee in the Fraudulent Conveyance Complaint. As such, the Complaint more than satisfies the requirements of Rule 8, as interpreted by Iqbal[8] and Twombly[9].

### E.       The Plaintiffs Have Established Grounds for a Finding of Alter Ego.

As an initial matter, the Plaintiffs' assertion of the alter ego claim in the Adversary Proceeding is not a violation of the automatic stay. Even in jurisdictions where alter ego claims are considered property of the estate, the automatic stay is implicated only when these actions are brought in a non-bankruptcy proceeding. See S.I. Acquisition, Inc. v. Eastway Delivery Serv. (In re S.I. Acquisition, Inc.), 817 F.2d 1142 (5th Cir. 1987) (holding that automatic stay barred state court action based on piercing the corporate veil theory of liability); Chestnut Grove

---

[8]   Ashcroft v. Iqbal, 556 U.S. 662 (2009).
[9]   Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

18

Condominium Unit Owners Assoc. v. Res. Trust Corp., 161 B.R. 860 (D.D.C. 1993) (holding that alter ego claim brought in the district court was property of the bankruptcy estate and the automatic stay applied); Trustees of the Construction Industry & Laborers Health & Welfare Trust, 09-02231, 2011 WL 4549228 *2-3 (D. Nev. 2009) (holding that automatic stay barred alter ego claim brought in district court).

MS Grand is and was liable for the obligations owed to the Noteholder as the alter ego of MS Grand Holdings.  MS Grand Holdings was the mere instrumentality and/or business conduit of the Debtors and their separate corporate forms should therefore be disregarded and MS Grand should be held liable for the obligations of MS Grand Holdings.  The Plaintiffs have the right to assert alter ego liability either as a stand-alone claim in this Adversary Proceeding or as a defense in the Avoidance Action.

7015171-v5

## IV.    CONCLUSION

Wherefore, based upon the foregoing and the entire record before the Court, the Plaintiffs

respectfully request that the Court enter an order denying the Motion to Dismiss or in the

alternative granting leave to amend the Complaint, including leave to amend the Complaint to

add the Kangs as defendants, and granting such other and further relief as is just and appropriate

under the circumstances of this case.

RESPECTFULLY SUBMITTED: August 23, 2013.

> /s/ Darek S. Bushnaq
> Gregory A. Cross
> Darek S. Bushnaq (VSB #41313)
> Catherine Guastello Allen
> Venable LLP
> 750 East Pratt Street, Suite 900
> Baltimore, MD 21202
> Telephone (410) 244-7400
> Facsimile (410) 244-7472
> dsbushnaq@venable.com
>
> Counsel for U.S. Bank National Association, as
> Trustee, successor in interest to Bank of America,
> National Association, as Trustee for Morgan
> Stanley Capital I, Inc., Commercial Mortgage Pass-
> Through Certificates, Series 2007-TOP27, by and
> through C-III Asset Management LLC, solely in its
> capacity as Special Servicer, and Wells Fargo Bank,
> National Association

20

7015171-v5

## Certificate of Service

I hereby certify that on this 23rd day of August, 2013, the foregoing Opposition to

Chapter 7 Trustee's Motion to Dismiss Complaint was served by first class mail, postage prepaid

to the following:

> Bradford F. Englander
> Christopher A. Jones
> Kenneth Oestreicher
> Whiteford, Taylor & Preston L.L.P.
> 3190 Fairview Park Drive, Suite 300
> Falls Church, Virginia 22042

> /s/ Darek S. Bushnaq
> Darek S. Bushnaq

7015171-v5